Drake, Cb. J.,
delivered the opinion of tbe court:
In tbis case tbe Attorney General bled in tbe clerk’s office of this court six interrogatories, intended to be propounded to Juan Fondero, a witness on bebalf of tbe defendants, in tbe city of Mexico, in tbe republic of Mexico, under a commission to be taken out for that purpose.
Tbe claimant moves that tbe said interrogatories be ruled out, for tbe following reasons in substance:
1. That tbe claimant’s brief in tbis case was filed more than six months ago, and no attempt bas heretofore been made to obtain tbis or other testimony from abroad, and 'this application therefore comes too late.
2. That tbe testimony of Fondero, as sought for by these interrogatories, could not be received by tbe court, or, at least, could produce no effect upon tbe case, inasmuch as be has been already examined in tbis case upon interrogatories and cross-interrogatories, under a commission issued from tbis court, and bas answered on tbe subject of tbe inquiry of the present interrogatories in a manner directly opposed to tbe information now sought from him.
3. That tbe testimony now sought from said witness is also1 in direct opposition to statements and facts set forth in bis petition of intervention filed in tbis case on the 21st of December last, and overruled by tbis court on tbe 23d of January last.
As to tbe first of these reasons, we dismiss it with tbe single remark that an application for the issue of a commission to take tbe testimony of a witness is not merely a question of time. It is in order at any time before trial to ask for such a commission ; but whether it will be issued when its issue will lead to a postponement of tbe trial must be decided by the facts presented in support of tbe application.
Tbe other reasons assigned are more important, and require us to look into tbe record in tbe case.
Tbe second reason is that Fondero bas already been examined as a witness in tbis case on tbe subject of tbe present interrogatories, and bas answered in a manner directly opposed to tbe information now sought from him. Tbis applies to tbe third, fourth, and fifth interrogatories, which are as follows:
3. “Were you resident of'the city of Mexico during stbe rev *97 olution of the winter of 1844 and 1845; and if so, please state fully tbe general opinion of Atocháis complicity with Santa Anna in that revolution ? .
4. “ Please state whether Atocha informed you of the object of his accompanying Santa Anna during his campaign in the winter of 1844 and 1S45 against the new administration, and state fully what he informed you.
5. ££If Atocha gave such information, please state when, whether before or after his expulsion.”
It appears, upon an inspection of the deposition of Pondero taken in this case on the 25th of January, 18'69, on behalf of the claimant, that he made the following statements: ££ That Atocha had never taken part in politics, and was never a military or civil employé;” that he, Pondero, <£ thought, and it was generally thought, that, on account of the friendly relations which Atocha had with Santa Anna and the members of his administration, said Atocha was expelled; he knows of no particular act, but it was public and notorious;” and that “in his (Pondero’s) opinion there was not any well-founded reason for the expulsion;” and that “ if there was any other person who transacted the same business as Atocha with Santa Anna, without meddling with politics, it was Don Francisco Murphy.”
It cannot be doubted that the object of tlm present interrogatories is to elicit testimony from Pondero in conflict with these statements. He declared that Atocha had never taken part in politics, and was never a military or civil employe; and the third interrogatory seeks to controvert this explicit declaration by evidence of “the general opinion of Atocha’s complicity with Santa Anna in that revolution.” Were evidence given of such “general opinion,” it would have no weight. Participation in a revolution cannot be proved by “ general opinion,” particularly when the person sought to be implicated is dead.
The fourth and fifth interrogatories look to proving Atocha’s complicity with Santa Anna’s revolution in 1844-’45 by his own supposed statements to Pondero. No evidence is offered that Pondero, if reexamined, would prove the making of any such statements; or that he would testify otherwise than as he did in his former deposition; or that he had then forgotten some matter which these interrogatories would cause him to state; *98 or that, upon reflection, he finds his former testimony to have been in some material point erroneous ; or that he desires opportunity to correct or explain it; or even that it is material to the defendants’ case that he should be put to answer these interrogatories. The interrogatories are filed, and notice given of them, as if it were a matter of* course for the commission to issue for his examination under them. It might be so if the witness had not been already examined and cross-examined: in this case; but as he has been, we cannot sanction his reexamination, unless upon some special ground satisfying us that the .ends of justice'require it.
In a paper submitted to us as an argument against this motion, it is urged that Atocha’s complicity with Santa Anna’s revolutionary acts in 1844-’45 was not the subject-matter of the examination under which Hondero previously testified; but this is a mistake of fact.
Among the cross-interrogatories put to Hondero, and answered by him, were the following, with his answers thereto:
Q. “ Have you any knowledge of the cause of said Atocha’s' expulsion from Mexico, now complained of?
A. “ He thinks, and it was generally thought, that on account of the friendly relations which Atocha had with Santa Anna and the members of his administration, said Atocha was expelled ; he Imows of no particular aet, but it was public and notorious.
Q. “ Do you know any just ground for said expulsion, or any fact which would tend to defeat this claim, or reduce its amount?
A. “ In his opinion, there was not any well-founded reason for the expulsion, but he cannot know all the inside workings of the government.
Q. “ Do you know of any other person associating himself, .as Atocha did, with Santa Anna during the hostilities which ended in the overthrow of his power, without aiding, or abetting, or taking sides with Santa Anna ?
A. “ If there was any other person who transacted the same business as Atocha with Santa Anna without meddling with politics, it was Don Francisco Murphy.”
These questions and answers show that the matter of Atocha’s complicity with Santa Anna was present in the mind of the Assistant Attorney ‘General who framed the cross-interrogato- *99 lies; and tbe answers to tbe first and last of them show tbat that matter was in tbe mind of tbe witness. Under tbat examination, all tbat is now sougilt could have been properly stated, and ought to have been. We therefore see no just ground for allowing a reexamination of the witness.
We are strengthened in this conclusion by tbe facts referred to in tbe third point of tbe claimant’s motion, to wit: Rondero’s attempted intervention in this suit at tbe present term of this court, with a view to avail himself, as alleged assignee of Ato-cha, of tbe benefit of such judgment in favor of Atocha as might be rendered in this case.
In his petition to that end, Rondero avers that “Atocha was unjustly and illegally expelled from the Mexican republic by the authorities of said republic, by reason whereof he suffered great loss aDd damage, and had a valid claim for a large amount against said government.”
His previous testimony tended to prove the truth of these allegations. It was given when he claimed to be assignee of Atocha’s claim. This court refused to allow him to intervene in this case as such assignee, and thereafter the present interrogatories were filed. It is within the range of possibility that, finding his claim as assignee excluded here, he made known that, if reexamined, he would testify to matters which would tend to defeat Atocha’s claim altogether. No evidence of such fact is before us, but the bare possibility of it should, at least, cause us to scan more closely any unexplained attempt to draw from him testimony in conflict with that he had previously given.’
The motion to rule out the interrogatories is sustained.